**IN THE UNITED STATES DISTRICT COURT**
**THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DERRICK BAILEY,** | } |
| **Plaintiff,** | } |
| | } |
| **vs.** | }**CIVIL ACTION FILE NO.** |
| | }**1:13-CV-00941-RWS-ECS** |
| **CITY OF DOUGLASVILLE,** | } |
| **HARVEY K. PERSONS, III, in his** | } |
| **individual and official capacity as** | } |
| **Mayor, CHRIS WOMACK, in his** | } |
| **individual and official capacity as Chief** | } |
| **of Police, SGT. TODD GARNER, in his** | } |
| **individual and official capacity; CAPT.** | } |
| **ZACK ARDIS, in his individual and** | } |
| **official capacity, SGT. AMY BELCHER,** | } |
| **in her individual and official capacity,** | } |
| **DOUGLAS COUNTY, MAJOR** | } |
| **TOMMY WHEELER, in his individual** | } |
| **and official capacity, JOHN DOE** | } |
| **Officers in their individual and official** | } |
| **capacity,** | } |
| **Defendants.** | } |
| | / |

## AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

COMES NOW, Plaintiff, Derrick Bailey, and files this complaint in tort for

damages and shows the Court the following:

## I.    JURISDICTION AND VENUE

1.

This action is brought pursuant to the following provisions:

(1)     Employment Discrimination – 42 U.S.C. § 1981, as amended in 1991;

(2)     Deprivation of Civil Rights – 42 U.S.C. § 1983;

(3)     Conspiracy to Deprive of Civil Rights – 42 U.S.C. § 1985(3);

(4)     Racketeer Influenced and Corrupt Organizations Act ("RICO") – 18 U.S.C. § 1961-1962 and 18 U.S.C. § 1512; O.C.G.A. §§ 16-14-1 through 16-14-4;

(5)     Interference with Employment Relations;

(6)     Damage to reputation – O.C.G.A. §§ 51-5-1 through 51-5-5;

(7)     Intentional Infliction of Emotional Distress – O.C.G.A. §§ 51-12-5 and 51-12-6.

2.

Federal and supplemental jurisdiction are conferred upon this Court by 28 U.S.C. §§1331, 1332, and 1367.

3.

Venue is proper in this jurisdiction, pursuant to 18 U.S.C. § 1965 and 28 U.S.C. §1391, in that the Defendants reside in this district in which a substantial part of the events or omissions giving rise to the claim occurred.

## II.   PARTIES

4.

Plaintiff, Derrick Bailey, (hereinafter, "Officer Bailey"), is a citizen of the United States and resident of Douglas County and the district in which a

substantial part of the events or omissions giving rise to the claim occurred.

5.

Defendant, the City of Douglasville, has its principal place of business in Douglasville, Georgia.   The City may be served through its agent, Harvey K. Persons, III at City Hall, 6695 Church Street, Douglasville, Georgia  30134.

6.

Defendant, Mayor Harvey K. Persons, III, (hereinafter, "Mayor Persons") was at all times pertinent hereto acting as Mayor of Douglasville, under color of state law, jointly and separately in the discharge of his duties and with the express authority of the City of Douglasville.   He may be served at 6695 Church Street, Douglasville, Georgia  30134.

7.

Defendant, Chief Chris Womack (hereinafter, Chief Womack") was at all times pertinent hereto acting as the Chief of Police, under color of state law, jointly and separately in the discharge of his duties and with the express authority of the City of Douglasville.   He may be served at 2083 Fairburn Road, Douglasville, Georgia  30135.

8.

Defendant, Sgt. Todd Garner (hereinafter, "Sgt. Garner") was at all times

pertinent hereto acting as a police officer, under color of law, jointly and separately in the discharge of his duties and with the express authority of the City of Douglasville.  He may be served at 2083 Fairburn Road, Douglasville, Georgia 30134.

9.

Defendant, Capt. Zack Ardis (hereinafter, Capt. Ardis") was at all times pertinent hereto acting as a police officer, under color of law, jointly and separately in the discharge of his duties and with the express authority of the City of Douglasville.  He may be served at 2083 Fairburn Road, Douglasville, Georgia 30134.

10.

Defendant, Sgt. A. Belcher (hereinafter, "Sgt. Belcher") was at all times pertinent hereto acting as a police officer, under color of law, jointly and separately in the discharge of her duties and with the express authority of the City of Douglasville.  She may be served at 2083 Fairburn Road, Douglasville, Georgia 30134.

11.

Defendant, Douglas County, has its principal place of business in Douglas County, Georgia.  The County may be served through Tom Worthan, Chairman of

4

the Board of Commissioners at the Douglas County Courthouse, 8700 Hospital Drive, Douglasville, Georgia  30134.

### 12.

Defendant, Major Tommy Wheeler (hereinafter, "Major Wheeler") was at all times pertinent hereto a deputy of the Douglas County Sheriff's Office, acting under color of state law, jointly and separately in the discharge of his duties and with the express authority of Douglas County.  He may be served at Douglas County Sheriff's Department, 8470 Earl D. Lee Blvd., Douglasville, Georgia 30134.

### III.   FACTUAL ALLEGATIONS

### 13.

Officer Bailey is a 48 year old African American male and has lived in Douglas County for approximately 22 years.

### 14.

Officer Bailey was first hired as a police officer with the City of Douglasville Police Department (hereinafter, "CDPD") in March 2010.

### 15.

Officer Bailey was terminated by the City of Douglasville and Chief Womack on November 16, 2012.

**_Officer Bailey's Qualifications:_**

16.

On Officer Bailey's hire date with CDPD, he had been POST certified for 24 years, and he had approximately 17.5 years experience in law enforcement.

17.

On May 27, 2010, Officer Bailey received an above average Employee Performance Appraisal.

18.

On July 25, 2011, Officer Bailey received a positive Employee's Evaluation. Lt. Watson, one of the Appraising Supervisors, wrote Officer Bailey's "*reports are very detailed*" and "*His officer safety skills are excellent.*"

19.

Lt Watson further wrote Officer Bailey "makes very good decisions in stressful situations," and "*He always remains calm.*"     In    addition:    Officer Bailey "*would like to be a supervisor and be involved in the Field training program or the training program.*"

20.

On June 15, 2012, Officer Bailey received an above average Employee Performance Appraisal from his Appraising Supervisor, Lt. Watson.

**_Officer Bailey's Requests for Promotions, and the Denials_:**

21.

On or about mid 2011, Officer Bailey applied for the position of Detective with the CDPD.  He was never promoted to the position, and the Department never provided him with a reason why he was never promoted.

22.

On or about the end of 2011, Officer Bailey applied for the position of Sergeant with the CDPD.  He was never promoted to the position, and the Department never provided him with a reason why he was not promoted.

**_Officer Bailey's Complaints to CDPD and Chief Womack before Termination_:**

23.

On or about April 26, 2011, Officer Bailey made a written complaint to Chief Womack that CDPD officers and deputies of the Douglas County Sheriff's Office (DCSO) were profiling minority citizens and committing Fourth Amendment violations and other constitutional violations against minorities.

24.

In the April 26 written complaint, Officer Bailey notified Chief Womack that CDPD officers were making racially offensive comments and jokes about minorities; for example, they described black males as "black as shoe polish wearing all black."  They joked about the city of Douglasville's logo representing a

lynching tree.

25.

In the April 26 written complaint, Officer Bailey made Chief Womack aware that dispatchers of the CDPD were deliberately sending him to a disproportionate amount of calls, while white officers were not being dispatched as regularly as he was.

26.

In the April 26 written complaint, Officer Bailey expressed to Chief Womack that he did not feel welcomed by lower management and CDPD officers, and he was working in a hostile working environment.

27.

For example, when Officer Bailey started his employment with DCPD, Sgt. Belcher issued him the password, "peccary" (meaning "black pig") for his use of the mobile computer in the police vehicle.   Sgt. Belcher refused to assign Officer Bailey another password, even after he protested that the assigned password was racially offensive to him.

28.

In the April 26 written complaint, Officer Bailey expressed to Chief Womack that he feared he would lose his job because he was making the complaints and speaking out about racial profiling and other violations.

## _CDPD's Articulated Reason For Terminating Officer Bailey_:

29.

On or about September 22, 2012, Officer Bailey responded to a shoplifting call at Wal-Mart in Douglasville, and he wrote a Police Report of the incident.

30.

Initially, Lt. Watson approved the report; subsequently, Sgt. Belcher objected to the approval.

31.

Lt. Watson and Capt. Ardis ordered Officer Bailey to rewrite the Narrative of the Report.  They and Sgt. Belcher instructed Officer Bailey to change the Report and include certain property (socks) as being stolen.

32.

Officer Bailey responded that he couldn't list property (socks) as stolen because he didn't witness or observe the same being stolen on video or from any other evidence that was available and presented to him.

33.

Subsequently, Sgt. Garner, Capt. Ardis, and Sgt. Belcher reviewed the video and Officer Bailey's statement, which substantiated Bailey's position that no evidence existed that the suspect stole the property (socks).    Nevertheless, they vigorously pursued the investigation against him.

34.

Following Defendants' orders, Officer Bailey rewrote his Report (a Public Narrative and the Officer's Narrative).  Subsequently, Sgt. Belcher, contrary to policy, sent the Officer's Narrative to Nicholas W. Gilbert, a 23 year old Loss Prevention officer at Wal-Mart.

35.

On or about October 22, 2012, Officer Bailey responded to a second Wal-Mart shoplifting call to assist Officer Stackawhich (CDPD).  After Officer Bailey talked with the Loss Prevention officer, Mr. Gilbert, he reviewed the video (of the suspect).

36.

Officer Bailey told Mr. Gilbert that the poor-grainy quality of the video and the distance from the camera to the suspect, although the suspect's conduct may have been suspicious, it did not show the suspect had committed a theft, and no officer under those circumstances could make a determination that a theft had occurred.  Officer Stackawhich interrogated and arrested the suspect.

37.

Prior to the October 22 call, Officer Bailey had made many arrests for Wal-Mart concerning theft suspects.  Officer Bailey reminded Mr. Gilbert of this after he (Mr. Gilbert) objected to Officer Bailey's statement.

38.

On October 22, 2012, the Department placed Officer Bailey on administrative leave with pay and subsequently suspended him for 3 days without pay and, on November 16, 2012, Chief Womack terminated Officer Bailey.

39.

On November 8, 2012, Chief Womack and the Department charged Officer Bailey with conduct unbecoming.

40.

Prior to Plaintiff's termination, he did not have any write-ups or reprimands in his record.

41.

Officer Bailey immediately filed EEOC charges – Charge No. 410-3013-01694.[1]  Subsequently, Officer Bailey filed an unemployment application with the Department of Labor (DOL).  After the Department initially denied his application, he appealed and was awarded unemployment benefits.

***Officer Bailey's Appeal of His Termination and His Continuing Complaints***:

42.

On November 18, 2012, Officer Bailey filed an Appeal of his termination to

_____

[1]Plaintiff's EEOC claim is currently active.  The instant employment discrimination claim is brought pursuant to 42 U.S.C. §1981.

the City of Douglasville.  In his appeal, he reiterated to the City of Douglasville that he believed his termination was for him having spoken out and complained about CDPD and DCSO officers committing racial profiling and other constitutional violations against minorities.

43.

In his November 18 Appeal, Officer Bailey reiterated to the City of Douglasville that Lt. Greg Weaver (CDPD) referred to arresting minorities, stating: "Were gonna run a road block today; let's go get us some Mexicans."  Actually, CDPD officers profiled Hispanics and other minorities because of their race, stopped them without probable cause, and illegally detained them.   Prior to November 18, the City, Mayor Persons, and Chief Womack had knowledge that police officers were racially profiling Hispanics and other minorities.

44.

In his November 18 Appeal, Officer Bailey reiterated to the City of Douglasville that Lt. Greg Weaver (CDPD) during roll call, stated: "If you want the country full of illegals like the white house, vote democrat."  Prior to November 18, the City, Mayor Persons, and Chief Womack had knowledge that these racially motivated jokes were being made by police officers.

45.

In his November 18 Appeal, Officer Bailey reiterated to the City of

Douglasville that Officer Robert Lane (DCPD) was driving while under the influence of alcohol.  Prior to November 18, the City, Mayor Persons, and Chief Womack had knowledge that Lt. Lane had been driving under the influence.

46.

In his November 18 Appeal, Officer Bailey reiterated to the City of Douglasville that Officer Adam Forrester (DCPD) was drunk and disorderly in a public bar.  Prior to November 18, the City, Mayor Persons, and Chief Womack had knowledge that Lt. Forrester had been drunk and disorderly.

47.

In his November 18 Appeal, Officer Bailey reiterated to the City of Douglasville that Officer Mike McDonald was involved in a domestic incident or fight at the home of a Douglasville citizen (male) because the citizen caught Officer McDonald in his (citizen's) home with his girlfriend.    Prior to November 18, the City, Mayor Persons, and Chief Womack had knowledge that Officer McDonald was involved in the domestic dispute.

48.

In his November 18 Appeal, Officer Bailey reiterated to the City of Douglasville that Officer John Jackson (DCPD) profiled Hispanics and Latinos while making traffic stops.  The City, Mayor Persons, and Chief Womack had knowledge that Officer Jackson was profiling Hispanics and Latinos.

49.

In his November 18 Appeal, Officer Bailey reiterated to the City of Douglasville that Officer John Jackson (DCPD) drove his personal vehicle around for approximately three years with an expired tag. The DCPD had knowledge that Officer Jackson was driving his vehicle with an expired tag.

### *Differential/Disparate Treatment In Favor of Caucasian Officers*:

50.

In 2010, a Caucasian female driver struck and killed an African American woman in the City of Douglasville. Officer Bailey informed the CDPD investigator, on the scene, that the pupils of the driver of the vehicle were dilated, and he also informed his field training officer, at the time, Donna Kimbrell, about the driver's pupils.

51.

Officer Kimbrell responded that they had things under control; however, the driver was never given a chemical test, pursuant to Georgia Statue regarding administering chemical tests.

### *Officer Robert Long (Caucasian):*

52.

On or about October 2, 2003, the Department determined that Officer Long had failed to follow-up on a case, in violation of the SOP; however, the

Department did not take any disciplinary action against him.

53.

On or about October 23, 2003, the Department issued Officer Long an oral reprimand for failing "*to report an accident which resulted in front end damage to patrol unit 2211,*" and the Department did not take any further action against him.

**Officer Damon Partin (Caucasian):**

54.

On or about April 19, 2005, the Department gave Officer Partin verbal counseling for his involvement in a vehicle accident. The accident was Officer Partin's "*second offense in 24 months.*" The Department did not take any further action against him.

55.

On or about January 13. 2006, the Department reprimanded Officer Partin for poor workmanship, for answering a 911 call on his cell phone. It issued an oral reprimand and counseling and did not take any further action against him.

56.

On or about September 25, 2007, the Department reprimanded Officer Partin for not completing his Daily Activity Field Reports and for failing to respond to call to service without delay. Officer Partin was counseled on the same issue on November 26, 2006. The Department issued Officer Partin a reprimand and did

not take any further action against him.

57.

On or about November 17, 2007, a citizen complained to the Department that Officer Partin used profanity.  The Department dismissed the complaint as unfounded and offered Officer Partin verbal counseling on how to "*properly operate and check to make sure the audio pack* [police radio] *is working*."  No further disciplinary action was taken against him.

58.

On or about February 8, 2008, the Department reprimanded Officer Partin for dereliction of duty and placed him on six months probation.  It did not take any further action against him.

59.

On or about June 11, 2008, a citizen complained to the Department that Officer Partin "*was very disrespectful to her and did not want to hear her side of the story as he tried to make her move her vehicle out of the roadway*."  The Department's investigation "*found that the complaint against Officer Partin was unfounded*."

60.

On or about June 30, 2008, the Department gave Officer Partin a verbal reprimand and counseling for writing a citizen a "*citation for change of address for

*a private property accident which is a violation of the SOP for traffic citations*."
The Department did not take any further action against him.

61.

On or about June 12, 2010, a citizen complained that Officer Partin attacked her during a traffic incident.  The citizen further complained that Officer Partin pulled the citizen from the vehicle and forced her to put her arms behind her back. Officer Partin threatened to taser the citizen.  The Department did not discipline Officer Partin.

62.

On or about June 23, 2010, Sgt. Brad Loudermilk (CDPD) observed Officer Partin having parked in the Ingles parking lot fire lane unjustifiably.   The Department "*warned that if this were to happen again he could lose his privileges to have a take home vehicle*."  Further, the Department issued Officer Partin copies of the SOP and "*policies were given*" to him.  The Department did not take any further action against him.

63.

On or about July 7, 2010, the Department determined that Officer Partin was speeding "*in excess of 100 mph to and from work*" in the police vehicle.  The Department reassigned Officer Partin "*to patrol for 90 days and take home vehicle will be taken away*."  The Department did not take any further action against him.

17

64.

On or about September 28, 2011, a complaint was issued against Officer Partin for: "*Conduct unbecoming an officer*," "*violation of the SOP*", *"speeding and reckless driving*," make a "*traffic stop and issuance of a citation outside the city's jurisdiction for improper braking*," and "*the false statement of the Uniform Traffic Citation*." During the Department's investigation into the complaint, Chief Womack placed Officer Partin on paid administrative leave. He did not take any further action against him.

**Officer Bryan Gass (Caucasian):**

65.

On or about August 25, 2005, Officer Gass "*submitted a written exam* [to the Department] *for a promotion which contained profanity in several places*." As a result, he was forbidden from testing on future promotion exams until 2007. The Department did not take any further disciplinary action against him.

66.

On or about March 30, 2006, the Department gave Officer Gass counseling for placing a prisoner in the holding cell and for failing to take the prisoner's belt. The Department did not take any further disciplinary action against him.

67.

On or about March 17, 2008, Officer Gass "*failed to exercise due regards to*

*the motoring public...after failing to engage in a motor vehicle pursuit*." Capt. Chris Womack gave Officer Gass a written reprimand. The Department did not take any further disciplinary action against him.

68.

On or about March 17, 2008, the Department found that Officer Gass "*provided false information to 911*" and to the Department "*during the chase of the suspects driving*." Capt. Chris Womack gave Officer Gass a written reprimand. The Department did not take any further disciplinary action against Officer Gass.

69.

On or about April 28, 2007, the Department gave Officer Gass an oral reprimand for having "*overslept and did not arrive to work*" on time. The Department did not take any further disciplinary action against him.

**Officer Greg Weaver (Caucasian):**

70.

On or about June 27, 2006, Officer Weaver left two inmates in the booking area, unsecured and in violation of SOP. Consequently, the inmates took prescription drugs from the facility. The Department placed a written reprimand in Officer Weaver's file, and it did not take any further action against Officer Weaver.

**Sgt. Steve Morris (Caucasian):**

71.

On or about June 6, 2005, the Department found Sgt. Morris in dereliction of his duty.  The Department gave Sgt. Morris a three day suspension without pay.  It did not take any further disciplinary action against him.

72.

On or about September 6, 2001, the Department issued Sgt. Morris a reprimand for being tardy on August 18, 2001, September 5, 2001, and September 6, 2001.  It did not take any further disciplinary action against him.

73.

On or about September 14, 2006, Sgt. Morris failed to turn in required documents.  The Department issued Sgt. Morris an oral reprimand. It did not take any further disciplinary action against him.

74.

On or about October 29, 2006, Sgt. Morris arrived to work late.   The Department did not take any disciplinary action against him.

**Officer Todd Garner (Caucasian):**

75.

On or about March 8, 2006, the Department issued Officer Garner a written reprimand for insubordination.  The Department did not take any further action

against him.

76.

On or about June 6, 2005, the Department determined Officer Garner exhibited conduct in violation of the SOP.  The Department did not take any disciplinary action against him.

77.

On or about November 3, 2006, the Department issued Officer Garner an oral written reprimand for arriving to work late.  It did not take any further disciplinary action against him.

### Officer Dallas Hickman (Caucasian):

78.

On or about May 15, 2007, the Department gave Officer Hickman verbal counseling for poor workmanship.  It did not take any further action against Officer Hickman.

79.

On or about February 2, 2010, Sgt. Hickman failed to secure a crime scene. The Department reassigned Sgt. Hickam to a more mobile position as a supervisor. It did not take any further action against him.

***Officer Tully Yount (Caucasian):***

80.

On or about September 9, 2006, the Department determined that Officer Yount was involved in a vehicle accident while operating his police vehicle. The Department gave Officer Yount a written reprimand. It did not take any further action against Officer Yount.

81.

On or about December 29, 2006, the Department determined that Officer Yount had not showed up to work at an extra job, as was required.        The Department gave Officer Yount a 30 days suspension from working any extra jobs. It did not take any further action against him.

82.

On or about September 28, 2007, the Department determined that Officer Yount was speeding with emergency equipment while in pursuit of a felon. The Department instructed Officer Yount to read the SOP regarding operation of his emergency equipment and his driving. It did not take any further action against him.

83.

On or about March 20, 2008, the Department determined that Officer Yount, without permission, repaired and altered his city owned patrol vehicle. The

Department ordered Officer Yount to pay the City of Douglasville for having to repair the vehicle, and it placed a reprimand in his file.  It did not take any further action against him.

84.

On or about September 4, 2008, the Department determined that Officer Yount made statements unbecoming of an officer.  A written reprimand was placed in his file.  The Department did not take any further action against Officer Yount.

**Officer Stacy Fuller (Caucasian):**

85.

On or about March 10, 2008, the Department determined that Officer Fuller did not report to her extra job, as was required.      The Department gave Officer Fuller a 30 day suspension from working an extra job and a written reprimand.  It did not take any further action against her.

**Officer Adam Forrester (Caucasian):**

86.

On or about August 22, 2006, Officer Forrester arrived to work late.    The Department gave Officer Forrester an oral reprimand and verbal counseling.

87.

On or about June 10, 2008, the Department determined that Officer Forrester showed for duty under the influence of alcohol.      The  Department  gave  Officer

23

Forrester a written reprimand and a copy of SOP, and it sent him home with no pay

for 6 hours.  It did not take any further action against him.

### Officer Tim Roessel (Caucasian):

88.

On  or  about  March  10,  2009,  the  Department  determined  that  Officer

Roessel had improperly handcuffed an arrestee, causing her to escape  The

Department  gave Officer Roessel counseling and copied the incident to his file.  It

did not take any further action against him.

### Officer Robert Lane (Caucasian):

89.

On or about October 14, 2008, the Department determined that Officer Lane

was involved in an accident while operating his police vehicle.  The     Department

issued Officer Lane a written reprimand.  It did not take any further action against

him.

### Officer Ashley Sanders (Caucasian):

90.

On or about May 4, 2009, the Department determined that Officer Sanders

failed  to  effectively  document  a  citizen's  complaint  and  transport  a  severely

injured  prisoner  to  Douglas  Wellstar  Hospital.   The  Department  gave  Officer

Sanders a written reprimand.    The  Department  did  not  take  any  further  action

against him.

91.

On or about September 21, 2012, the Department reprimanded Officer Sanders for conduct unbecoming, in that he failed to follow command. The Department issued Officer Sanders a written reprimand and suspended him for one day. It did not take any further action against her.

**Officer Chris Johnson (Caucasian):**

92.

On or about April 4, 2008, the Department determined that Officer Johnson had been speeding while driving his police vehicle on six different occasions. The Department counseled Officer Johnson. It did not take any further action against him.

93.

On or about November 18, 2008, the Department determined that Officer Johnson was verbally aggressive and disrespectful when his superior spoke to him about unnecessary radio traffic. The Department gave Officer Johnson verbal counseling. It did not take any further action against him.

94.

On or about December 6, 2008, the Department determined that Officer Johnson inappropriately operated the emergency device to his police vehicle and

was speeding.   The incident included four separate occurrences over a five-day period.  Officer Johnson received a written reprimand, one day suspension, loss of his vehicle take home privileges, and he was required to attend a defensive driving course.  The Department did not take any further action against him.

95.

On or about May 4, 2009, the Department counseled Officer Johnson for mishandling drugs used for K-9 training.  The Department did not take any further action.

96.

On or about July 21, 2009, Chief Womack observed Officer Johnson follow another vehicle too close and drive over the speed limit.   The  Department  lectured Officer Jordan and took no further action.

97.

On or about October 13, 2009, the Department determined that Officer Johnson dealt with a subject in an unprofessional manner and did not properly utilize his audio device.  The Department placed a written reprimand in Officer Johnson's file.  It did not take any further action against him.

98.

On or about November 18, 2009, the Department reviewed Officer Johnson's file and determined that he had six incidents of excessive speed, for four

violations of emergency vehicle operation, and following too close.    The Department stopped Officer Johnson's take home vehicle privileges, and he no longer functioned as a K-9 handler.  It did not take any further action against Officer Johnson.

**Lt. Gil Guthrie (Caucasian):**

99.

On or about July 27, 2009, the Department determined that Lt. Guthrie had been issuing inappropriate emails and projected a poor attitude.        The Department issued Lt. Guthrie a written reprimand and reassigned him to the Detective Division.  It did not take any further action against him.

100.

On or about February 23, 2010, the Department determined that Lt. Guthrie had exerted excessive force upon a suspect by kicking him the head and face while the suspect was being held on the ground by five officers, and it determined he was in dereliction of duty.  Lt. Guthrie was suspended for 80 hours, demoted to rank of Detective, placed on probation for six months, and he was required to attend use of force training.  The Department did not take any further action against him.

**Officer Sadye Pittman (Caucasian):**

101.

On or about October 26, 2007, the Department determined that Officer

27

Pittman conducted herself in an unprofessional manner.   The Department   issued
Officer Pittman a written reprimand.  It did not take any further action against her.

102.

On or about September 16, 2010, the Department gave Officer Pittman
verbal counseling for being late for Prelims.  The Department did not take any
further actions against her.

103.

On or about October 1, 2010, the Department determined that Officer
Pittman failed to communicate with 911 Supervisor.  The Department ordered
Officer Pittman to keep her City issued phone with her at all times, charged, and
voice mails clear at all times.  It did not take any further action against her.

104.

On or about October 20, 2010, the Department gave Officer Pittman verbal
counseling for conducting personal business without notifying her supervisor.  The
Department did not take any further action against her.

105.

On or about December 2, 2010, the Department gave Officer Pittman verbal
counseling for being late for Prelims a second time.  The Department did not take
any further action against her.

106.

On or about December 17, 2010, the Department determined that Officer Pittman was insubordinate for failing to complete a Daily Field Activity Report. The Department ordered that Officer Pittman complete her Report timely.  It did not take any further action against her.

107.

On or about January 18, 2011, the Department determined that Officer Pittman was insubordinate for failing to provide a supplemental report and failure to call over the radio.  The Department had previously counseled Officer Pittman in these areas on January 13 and 14, 2011.  It gave her a written reprimand and given 30 days notice to improve.  It did not take any further action against her.

108.

On or about April 1, 2011, the Department determined Officer Pittman exhibited poor workmanship, in that she failed to write an Incident Report for an incident that actually occurred.  The Department issued Officer Pittman a written reprimand.  It did not take any further action against her.

**_Lt. Mike McDonald (Caucasian):_**

109.

On or about August 12, 2011, the Department determined that Lt. McDonald's conduct was not becoming of an officer, in that he wrote and posted a

letter that was inappropriate.     The Department demoted Lt. McDonald to Officer. It did not take any further action against him.  The Department had previously counseled Lt. McDonald on three occasions for conduct unbecoming, on an off duty conduct, and violating the take home care policy.

### *Officer John Jackson (Caucasian):*

#### 110.

On or about September 27, 2011, the Department reprimanded Officer Jackson for missing work at his part-time job.  The Department issued him a warning.  It did not take any further action against him.

### *Officer Torre Langley (Caucasian):*

#### 111.

On or about July 12, 2012, the Department reprimanded Officer Langley for conduct unbecoming an officer.  The Department issued a written reprimand and ordered training.  It did not take any further action against him.

#### 112.

On or about August 29, 2012, the Department reprimanded Officer Jackson for conduct unbecoming of an officer when he violated a traffic law.  The Department issued Officer Jackson a reprimand and a one day suspension without pay.  It did not take any further action against him.

***Officer Shane Graham (Caucasian):***

113.

On or about August 30, 2012, the Department reprimanded Officer Graham for making a poor decision.  The Department placed the writing in Officer Graham's file.  It did not take any further action against him.

***<u>Officer Bailey's Appeal Hearing after Termination:</u>***

114.

On December 14, 2012, the City of Douglasville commenced hearing Officer Bailey's appeal to determine if the CDPD would reinstate him to his position as police officer or confirm his termination.

115.

The December 14 meeting was suspended to afford the City Attorney time to provide Officer Bailey with a "written summary of the factual basis for the Police Chief's dismissal of Officer Bailey."

116.

On December 21, 2012, the City Attorney issued Officer Bailey's attorney the "written summary" of the reason for his termination.  On February 8, 2013, the City of Douglasville heard Officer Bailey's appeal.

**_DCPD and DCSO Harassment of Officer Bailey after His Appeal and Reinstatement_:**

117.

On the evening of February 8, 2013, a DCSO's vehicle (occupied by two officers) followed Officer Bailey on I-20 as he drove his private vehicle from Douglasville into the City of Atlanta. The Douglas County officers followed him to his destination, walked into the establishment that Officer Bailey entered, and stared him down.

118.

On the following day, February 9, 2013, a DCSO and CDPD vehicle followed Officer Bailey as he drove his private vehicle on I-20 East.

119.

On February 11, 2013, Officer Bailey's attorney notified Douglas County and the city of Douglasville, in writing, of the week-end trailing and asked the County and City to order its officers to desist from harassing him.

120.

On February 15, Officer Bailey, through his attorney, made an inquiry to Chief Deputy Stan Copeland (DCSO) whether he (Bailey) would be permitted to conduct a photo lineup of DCSO to identify the officers that were following him.

121.

On the same day, Major Wheeler responded, "*If Mr. Bailey wants to come*

*by and look at pictures of employees of the Sheriff's Office, he just needs to call me and set up a time.*"  Approximately one hour and forty-five minutes later, Major Wheeler issued a "Be On The Look Out" (BOLO) against Officer Bailey.[2]

122.

The BOLO displayed Officer Bailey's photograph, and it described him as a "*loose cannon.*"  In addition, the BOLO further stated: "*Consider this man a danger to any L.E.O. in Douglas County and act accordingly.*"

123.

On February 21, 2013, the City of Douglasville informed Officer Bailey that he would be reinstated to his job.

124.

On February 28, 2013, Officer Bailey returned to work at the CDPD; however, the Department did not restore Officer Bailey to full duty but, instead, assigned him to desk duty, filing in the Records Room.  Additionally, the Department prevented Officer Bailey from wearing his police uniform, including gun, badge, and other police equipment.

125.

Chief Womack, on February 28, informed Officer Bailey that he would be

---

[2] Plaintiff discovered the BOLO had been issued against him when he returned to work on February 28, 2013.

required to take another psychological exam because he (Bailey) said officers were following him.[3]   During this time, Chief Womack told Officer Bailey that the BOLO was issued against him because he was armed and dangerous, and he further stated that he had the power to cancel the BOLO by calling the Sheriff's Office.

126.

Shortly after Officer Bailey had been on desk duty, CDPD assigned him to duties where he was required to ride in the police car and walk in the community, without his uniform.

127.

During these assignments, Officer Bailey wore a cap and jacket with the DCPD insignia displayed.  He was exposed to potential danger without protection. Consequently, his attorney wrote the City and informed them that the situation posed danger to Officer Bailey.

128.

In addition, Officer Bailey's attorney inquired with the City when would he be reinstated to full duty and why would he be required to take another psychological exam.  The City has not provided an answer.[4]

---

[3] Plaintiff initially passed the exam when he was hired by the Department in 2010.
[4] As of this Amendment, Plaintiff returned to work on April 30, 2013.

129.

Into the fifth day of his reinstatement, Captain Sueann Shaw verbally reprimanded Officer Bailey for allegedly not following instructions; however, the accusation was determined unfounded later that day.

130.

On March 21, 2013, Officer Bailey learned that the Georgia Department of Labor's (GDOL) Board of Review reversed the administrative hearing officer's finding that the City of Douglasville's termination of Bailey was not justified.[5]

131.

The City of Douglasville's Mayor, Mayor Persons was one of the three (3) member board that reversed the decision.  In their findings, Mayor Persons and the others concluded that Officer Bailey "*engaged in conduct that "resulted in a criminal trespass warrant*" against him from Wal-Mart concerning his investigation into the September 22, 2012 shop lifting incident.

132.

On March 22, 2013, Officer Bailey inquired with Capt. Sueann Shaw about the issuance of a criminal trespass warrant being issued against him, and she told him that no warrant was issued.  When Officer Bailey asked for something in

---

[5]Officer Bailey and his attorney were not given notice of the City of Douglasville's Appeal hearing.

writing showing there was no warrant issued against him, Capt. Shaw and Major Graff told him they would not put it in writing.

133.

Concerned that he might be unjustifiably arrested, and restricting his freedom to travel and shop at Wal-Mart, Officer Bailey asked them why they were denying him the writing.

134.

At the end of Officer Bailey's shift, Capt. Ardis and the Human Resources Director, Fred Perry, called Bailey into a conference and agreed to write the police report stating there was no criminal trespass warrant issued against him.

135.

At that time, Mr. Perry informed Officer Bailey that he would be placed on paid administrative leave, pending an investigation, and he instructed Bailey not to return to work on Monday until he is contacted by the City Manager.

136.

When Officer Bailey inquired what he had done wrong, Mr. Perry said he had done nothing wrong, and the City did not give him a reason for placing him on leave.  Nevertheless, he further instructed Officer Bailey to stay away from the Police Department and City Hall.

## IV.   FEDERAL CAUSES OF ACTION

## COUNT I
## 42 U.S.C. § 1981 – EMPLOYMENT DISCRIMINATION

### 137.

Plaintiff incorporates by reference all the allegations contained in paragraph 1 through 136, as if specifically plead therein.

### 138.

Defendants, by their conduct and actions, violated Plaintiff's right to make and enforce contracts (including the making, performance, modification, termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship).

## DISPARATE TREATMENT
### (Asserted against the City of Douglasville, Mayor Persons, Chief Womack, Sgt. Todd Garner, Capt. Ardis, and Sgt. Belcher)

### 139.

The Defendants, with a conscious intent to discriminate, singled Officer Bailey out and treated him less favorably than other Caucasian officers who were similarly situated to him and on account of his race.   The work rules in the SOP were not applied to white officers for much more severe incidents than Bailey.

### 140.

Officer Bailey, African American, was qualified for his job as a police officer; he was subject to an adverse action (because of his race and his complaints

of racial profiling and other violations), and he was terminated for allegedly violating the SOP when Caucasian officers who violated the SOP and committed more severe offenses were not terminated or otherwise disciplined.

## HOSTILE WORK ENVIRONMENT
**(Asserted against City of Douglasville, Mayor Persons, Chief Womack, Sgt. Garner, Capt. Ardis, and Sgt. Belcher)**

141.

Defendants' conduct and actions, motivated by Officer Bailey's race, were severe and pervasive to the extent the same altered the condition of his employment and created an abusive work environment that was unwelcoming to him.

142.

The Defendants failed to make a good faith effort to conduct an objective investigation into the circumstances leading to the November 8, 2011 findings and subsequent adverse actions taken against Officer Bailey.  Their findings were purposely concluded against Officer Bailey to force him to quit and to justify the City's termination of him.

## RETALIATION
**(Asserted against the City of Douglasville, Mayor Persons, Chief Womack, Sgt. Garner, Capt. Ardis, and Sgt. Belcher)**

143.

During the incidents giving rise to this lawsuit, Officer Bailey was engaged

in statutorily protected activity when he complained to the City and Chief Womack about racial profiling by DCPD officers and DCSO deputies, and as a result of his complaining, these Defendants engaged in conduct intended to retaliate against him because he complained.  Consequently, the City and Chief Womack terminated Officer Bailey's employment.

144.

Upon Officer Bailey's reinstatement, he was removed from patrol, not permitted to wear his uniform, and resigned to desk duty.

145.

After Officer Bailey's reinstatement and his inquiry to the City, on March 22, 2013, about Mayor Person's DOL findings that a trespass warrant was issued against him, the City placed him on administrative leave on the same day, with no explanation for why he was being placed on leave.

## FAILURE TO PROMOTE
### (Asserted against the City of Douglasville and Chief Womack)

146.

When Officer Bailey applied for promotions and inquired about getting promoted, he had a real present interest in the position, in that he was qualified and able to perform the job.  Officer Bailey was not promoted because of the City's and Chief Womack's discriminatory practices, and he would have applied

for positions that he inquired about, but he was effectively deterred from applying because of the City's and Chief Womack's discriminatory practices.

## COUNT II
## 42 U.S.C. § 1983 – DEPRIVATION OF CIVIL RIGHTS

147.

Plaintiff incorporates by reference all the allegations contained in paragraph 1 through 146, as if specifically plead therein.

**FOURTEENTH AMENDMENT PROCEDURAL AND SUBSTANTIVE DUE PROCESS**
**(Asserted against the City of Douglasville, Mayor Persons, Chief Womack, Sgt. Garner, Capt. Ardis, Sgt. Belcher, Douglas County, Major Wheeler, and John Doe Officers)**

148.

Each Defendant, acting under color of law, engaged in conduct that deprived Officer Bailey of rights, privileges, or immunities protected by the constitution or laws of the United States.

149.

The actions of the Defendants and failure to act deprived Officer Bailey of a constitutionally protected interest in life and liberty under the due process of law, which constituted a government deprivation of that interest, and constitutional inadequacies or procedures accompanied the deprivation.

## EQUAL PROTECTION
**(Asserted against the City of Douglasville, Mayor Persons, Chief Womack, Sgt. Garner, Capt. Ardis, Sgt. Belcher, Douglas County, Major Wheeler, and John Doe Officers)**

150.

Defendants' violation of Officer Bailey's civil rights represents a systemic violation of the civil rights of minorities, based on his race, and the Defendants' failure to enforce the law as to Officer Bailey constituted a denial of Plaintiff's right, privilege, or immunity secured by the federal constitution.

## FREE SPEECH/WHISTLE BLOWER
**(Asserted against the City of Douglasville, Mayor Persons, Chief Womack, Sgt. Garner, Capt. Ardis, Sgt. Belcher, the County, Major Wheeler, and John Doe Officers)**

151.

The actions of the Defendants were in retaliation for Officer Bailey exercising his right to free speech when he complained that officers were racially profiling citizens and committing other civil rights violations, and such actions violated Bailey's rights as a government official to expose matters of public concern.

## Municipality Liability
**(Asserted against the City of Douglasville and Douglas County)**

152.

The City of Douglasville and Douglas County had policies and customs that

constituted deliberate indifference to Officer Bailey's constitutional rights, and Defendants were negligently, recklessly and deliberately indifferent in failing to instruct, supervise, discipline and/or control the Defendants, and that failure was the moving force behind the malicious acts that were inflicted upon Officer Bailey.  The City of Douglasville and Douglas County knew or should have known that the violations occurred, and they failed to stop them from continuing to occur.

## COUNT III
## 42 U.S.C. § 1985(3) – CONSPIRACY TO DEPRIVE OF CIVIL RIGHTS

153.

Plaintiff incorporates by reference all the allegations contained in paragraph 1 through 152, as if specifically plead therein.

### FOURTHEENTH AMENDMENT DUE PROCESS
### (Asserted against the City of Douglasville, Mayor Persons, Chief Womack, Sgt. Garner, Capt. Ardis, and Sgt. Belcher)

154.

Each Defendant, acting under color of law, engaged in conduct that deprived Officer Bailey and other minorities of their rights, privileges, or immunities that are protected by the constitution or laws of the United States.

155.

The actions of the Defendants and failure to act deprived Officer Bailey and

other minorities of a constitutionally protected interest in life and liberty under the due process of law, which constituted a government deprivation of that interest, and constitutional inadequacies or procedures accompanied the deprivation.

156.

The City of Douglasville and Chief Womack knew or should have known that the violations occurred and failed to stop the violations from occurring.

## FOURTH AMENDMENT SEARCH AND SEIZURE
### (Asserted against the City of Douglasville, Mayor Persons, and Chief Womack)

157.

CDPD officers have systematically executed unlawful stops, arrests, search and seizures, detentions, and prosecution of minority citizens without a warrant and probable cause.  Such action or failure to act deprived them of their right to be secure in their person and to be free from unreasonable searches and seizures as protected by the Fourth and Fourteenth Amendments of the United States Constitution.  The Defendants knew or should have known that the violations occurred and failed to stop the violations from continuing to occur.

## EQUAL PROTECTION
### (Asserted against the City of Douglasville, Mayor Persons, Chief Womack, Sgt. Garner, Capt. Ardis, and Sgt. Belcher)

158.

Defendants, with intention, conspired to deny Officer Bailey and other

minorities of the equal protection of the laws, or equal immunities or privileges under the law.  Further, the Defendants did or caused the civil rights of Officer Bailey and other minorities to be violated, in furtherance of the conspiracy, and their actions were discriminatorily or invidiously motivated by a racial animus. Consequently, Officer Bailey and other minorities were injured or deprived of having and exercising any right or privilege of a U.S. citizen.

### MUNICIPALITY LIABILITY
### (Asserted against the City of Douglasville)

159.

The City of Douglasville had policies and customs that constituted deliberate indifference to Officer Bailey's constitutional rights and the rights of other minorities, and the City was negligently, recklessly and deliberately indifferent in failing to instruct, supervise, discipline and/or control the Defendants, and that failure was the moving force behind the malicious acts that were inflicted upon Officer Bailey and other minorities.  The City of Douglasville knew or should have known that the violations occurred, and it failed to stop them from continuing to occur.

**COUNT IV**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS**
**(Asserted against the City of Douglasville, Mayor Persons, Chief Womack,**
**Douglas County, Sgt. Garner, Capt. Ardis, Sgt. Belcher, Major Wheeler, and**
**John Doe Officers)**

160.

Plaintiff incorporates by reference all the allegations contained in paragraph 1 through 159, as if specifically plead therein.

161.

The foregoing actions of the Defendants were unlawful and consist of a pattern of racketeering activity for the purpose of acquiring or maintaining, directly or indirectly, a system in which they increase revenue in the City of Douglasville and Douglas County by intentionally and unlawfully causing citizens to be falsely charged with criminal activity to justify their prosecution of these citizens, the citizens' commission to the penal system, and the citizens' requirement to pay fees that are associated with their prosecution and incarceration.

162.

Douglas County and Major Wheeler's issuance of the BOLO against Officer Bailey and John Doe Officers' following him constituted an act of terroristic threats, and their actions and the actions of the City Defendants represent continual harassment of Officer Bailey and decades long constitutional violations by officers in DCSO and CDPD.

163.

The foregoing actions of the Defendants were unlawful and consist of a pattern of racketeering activity for the purpose of acquiring or maintaining, directly or indirectly, an interest and control in the manner the CDPD and DCSO operate without facing any opposition.

164.

Defendants' actions were conspiratorial and aimed at Officer Bailey (and other minorities) to stop him from complaining about the violations that were occurring in the CDPD and DCSO.

165.

Each and every act of Defendants, above, or failure to act, was willful, wanton, intentional, and in reckless disregard of Officer Bailey's federally protected rights and the rights of other minorities.

166.

Each and every act of Defendants or failure to act, as named herein, was in violation of clearly established statutory or constitutional rights of which a reasonable officer should have known.

**COUNT V**
**INTERFERENCE WITH EMPLOYMENT RELATIONS**
**(Asserted against Mayor Persons and Chief Womack, Sgt. Garner, Capt.**
**Ardis, Sgt. Belcher, Major Wheeler, and John Doe Officers)**

167.

Plaintiff incorporates the allegations contained in paragraphs 1 through 166, as if specifically pled herein.

168.

Defendants conspired to and successfully interfered with Officer Bailey's business relations and prospective economic growth by maliciously procuring his termination and subsequent Administrative Leave.

**COUNT VI**
**DEFAMATION**
**(Asserted against the City of Douglasville, Mayor Persons, Chief Womack,**
**Sgt. Garner, Capt.  Ardis, Sgt. Belcher, Douglas County, and Major Wheeler)**

169.

Plaintiff incorporates the allegations contained in paragraphs 1 through 168, as if specifically pled herein.

170.

Defendants made false and malicious unprivileged statements concerning Officer Bailey, both orally and in writing to a third party, with the City and County's acquiescence.  Such statements tended to injure and did injure the professional reputation of Officer Bailey and exposed him to public contempt,

47

humiliation, and ridicule.

### 171.

As a result of Defendants' actions, Officer Bailey's reputation and good name have been damaged by reason of the defamation.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Asserted against the City of Douglasville, Mayor Persons, Chief Womack, Sgt. Garner, Capt. Det. Ardis, Sgt. Belcher, Douglas County, Major Wheeler, and John Doe Officers)**

### 172.

Plaintiff incorporates the allegations contained in paragraphs 1 through 171, as if specifically pled herein.

### 173.

Defendants' conduct was extreme, outrageous and insulting, so as to naturally cause humiliation, embarrassment, constituting mental anguish and suffering, and fear on the part of Officer Bailey, such that he is entitled to recover damages for severe emotional distress caused by Defendants' conduct. Consequently, Plaintiff's quality of life has diminished.

### 174.

Both the City of Douglasville and Douglas County acquiesced to the Defendants' conduct.

WHEREFORE, Plaintiff respectfully prays that this court allows this case to

go forward, that a jury be empanelled, and that Plaintiff recover:

a)      Actual and consequential damages as proven;

b)      Compensatory damages;

c)      Equitable relief, including promotion;

d)      Damages for pain and suffering in an amount to be proved at trial;

e)      Compensation for damage to reputation in an amount to be proved at trial;

f)      Punitive damages in an amount to be proved at trial for malicious acts of the Defendants;

g)      Compensation for attorney fees in defending the above mention charges and for all other and further relief as the Court deems appropriate, and Plaintiff requests that the Court order the following:

h)      That the City of Douglasville Police Department and Douglas County Sheriff's Office implement tracking devices in City and County police vehicles;

i)      Provide ongoing diversity training, and

j)      Promote minorities in supervisory positions and to patrol.

JURY TRIAL DEMANDED

Submitted this 2nd day of May, 2013.

/s/ Lucinda Jones
Lucinda Jones
Georgia Bar No. 402509
Attorney for Plaintiff

Post Office Box 90543
East Point, Georgia 30364
404-771-5790

**IN THE UNITED STATES DISTRICT COURT**
**THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DERRICK BAILEY,** | } |
| **Plaintiff,** | } |
| | } |
| **vs.** | }**CIVIL ACTION FILE NO.** |
| | }**1:13-CV-00941-RWS-ECS** |
| **CITY OF DOUGLASVILLE,** | } |
| **HARVEY K. PERSONS, III, in his** | } |
| **individual and official capacity as** | } |
| **Mayor, CHRIS WOMACK, in his** | } |
| **individual and official capacity as Chief** | } |
| **of Police, SGT. TODD GARNER, in his** | } |
| **individual and official capacity; CAPT.** | } |
| **ZACK ARDIS, in his individual and** | } |
| **official capacity, SGT. AMY BELCHER,** | } |
| **in her individual and official capacity,** | } |
| **DOUGLAS COUNTY, MAJOR** | } |
| **TOMMY WHEELER, in his individual** | } |
| **and official capacity, JOHN DOE** | } |
| **Officers in their individual and official** | } |
| **capacity,** | } |
| **Defendants.** | } |
| | / |

## <u>CERTIFICATE OF SERVICE</u>

This certifies that I have this day served opposing counsel with Plaintiff's

Amended Complaint for Civil Rights Violations with the Clerk of Court using the

CM/ECF system.  Plaintiff will send notification of such filing to the following

attorneys of record, via, electronically:

Sharon P. Morgan                    Theodore Freeman
Elarbee, Thompson, Sapp &           Freeman Mathis & Gary, LLP
Wilson, LLP                         100 Galleria Pkwy., Ste. 1600
800 International Tower              Atlanta, Georgia  30339
229 Peachtree Street, NE            770-818-0000
Atlanta, Georgia  30303             tfreeman@fmglaw.com
404-659-6700
morgan@elarbeethompson.com

Submitted this 2nd day of May, 2013.

                                    /s/ Lucinda Jones
                                    Lucinda Jones
                                    Attorney for Plaintiff

P. O. Box 90543
East Point, Georgia  30364
Georgia Bar No. 402509
Tele:  404-771-5790
Fax:  770-942-2051
advocate.lucinda@gmail.com